IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

FILED BY ____ D.C.

05 SEP 21  PM 4: 16

THOMAS M. GOULD
CLERK, U.S. DISTRICT COURT
W/D OF TN, MEMPHIS

JAMES C. BARBER, Sr.,                )
                                     )
            Plaintiff,               )
                                     )
vs.                                  )        No. 05-02041 Ma/P
                                     )
RADIANS, INC. and                    )
MIKE TUTOR,                          )
                                     )
            Defendants.              )

---

## ORDER GRANTING IN PART PLAINTIFF'S MOTION TO COMPEL

Before the court is Plaintiff James C. Barber's Motion to
Compel, filed June 29, 2005 (dkt #63). Radians, Inc. and its
President Mike Tutor (collectively "Radians"), filed their response
in opposition on July 22, 2005. For the following reasons, the
motion to compel is GRANTED in part and DENIED in part. Barber's
motion for attorney's fees and expenses is DENIED.

### I.  BACKGROUND

Barber was employed by Radians from 2001 to 2004. Radians's
business involves the designing, assembling, marketing and selling
of personal protection items, such as safety glasses, hard-hats,
and gloves. Pertinent to this case, Radians also has a branding
and licensing component, whereby Radians develops a product with a
customer's name on it and the product is either sold directly to

the customer or to third parties.   In December 2003, Radians
entered into a licensing agreement with the DeWalt Industrial Tool
Division of Black & Decker, a nationwide manufacturer of carpentry
tools and accessories ("DeWalt licensing agreement").

In August 2003, Radians and Barber agreed on a new
compensation arrangement for Barber, which Barber alleges included
a 3 ½% commission from all sales of DeWalt licensed products for
the life of the DeWalt licensing agreement.   In June 2004, Radians
terminated Barber's employment.   On September 14, 2004, Barber
filed a complaint against Radians and Tutor, alleging breach of
contract, promissory estoppel, quantum meruit, unjust enrichment,
and promissory fraud.   Barber now asks the court to compel Radians
to respond to his interrogatories and document requests.   Barber
also asks for sanctions against the defendants in the form of an
award of attorney's fees and expenses under Fed. R. Civ. P.
37(a)(4).

## II. ANALYSIS

Federal Rule of Civil Procedure 26(b)(1) allows for the
discovery of "any matter, not privileged, that is relevant to the
claim or defense of any party."   Fed. R. Civ. P. 26(b)(1).   The
rule further provides that the scope of discovery is broader than
evidence that will be admissible at trial.   Material is
discoverable if it is "reasonably calculated to lead to the
discovery of admissible evidence."   Id.; see also United Oil Co. v.

_Parts Associates, Inc._, 227 F.R.D. 404, 410 (D. Md. 2005)
("[R]elevance for discovery purposes is viewed more liberally than
relevance for evidentiary purposes.").

If the discovery sought appears relevant on its face, the
party resisting discovery bears the burden of demonstrating why the
request is irrelevant, unduly burdensome, or otherwise not
discoverable under the Federal Rules. _United Oil_, 227 F.R.D. at
411; _MJS Janitorial v. Kimco Corp._, no. 03-2102MaV, 2004 WL
2905409, at *6 (W.D. Tenn. Apr. 19, 2004) (unpublished). The court
need not compel discovery of relevant material if it concludes that
the request is "unreasonably cumulative or duplicative . . . [or]
the burden or expense of the proposed discovery outweighs its
likely benefit. . . ." Fed. R. Civ. P. 26(b)(2)(i), (iii).

**A.    Interrogatory Nos. 2-4, Production Request No. 15: Discovery
       Requests Relating to Other Employees and Independent
       Contractors**

In interrogatories 2 through 4, Barber seeks the following
information:

> **Interrogatory No. 2:** Identify all Radians employees who
> have performed either marketing, sales, or technical
> functions since the year 2000.
>
> **Interrogatory No. 3:** For each employee identified in
> response to interrogatory no. 2, state the name, dates of
> employment, title, job duties, last known address and
> telephone number, base compensation for each year of
> employment, and description [sic] the complete
> compensation arrangement including any and all commission

and bonus terms, during each applicable time period.[1]

**Interrogatory No. 4:** For all third party entities and individuals who are not employees (including employees of Techna, Inc.) of Radians that are used by Radians to perform sales representative services, identify the names of all such individuals or entities, and their address, contact person (in the case of a business entity), phone number and the complete terms by which you compensate same.[2]

**Production Request No. 15:** All documents relating to job descriptions for all sales and marketing positions with Radians, Techna, Inc. and Safety Supply Corporation.[3]

Barber contends that this information is relevant "for a number of reasons," but in his motion, provides only one: the compensation agreements for each marketing, sales, or technical employee are necessary to assess the merits of Radians's argument that it is not feasible to pay Barber a 3 ½% commission.

The court concludes that the identities and compensation agreements of other marketing, sales, and technical employees are not relevant to Barber's claim. Barber's alleged commission has nothing to do with the compensation arrangements of other employees. Further, to the extent that these compensation

---

[1]The parties have agreed that Radians does not have to state the actual dollar amounts paid to such employees.

[2]The parties have agreed that Radians does not have to state the actual dollar amounts paid to such third party entities and individuals.

[3]As agreed upon by the parties, this request includes all Techna, Inc. and Safety Supply Corporation employees who sell or market DeWalt products included and addressed in Radians's response to Interrogatory Nos. 2 and 3.

agreements are marginally relevant to assessing whether Radians could afford to pay Barber a 3 ½% commission given its cost in paying other sales employees their commissions, the court finds that the burden of production outweighs any likely benefit this information might provide to Barber. Finally, Barber has elsewhere requested information seeking Radians's sales, expenses, and profit margins for all DeWalt licensed products. These other discovery requests should provide more reliable information about Radians's ability to pay Barber's claimed commission. Barber's motion to compel relating to these specific discovery requests is DENIED.

**B.      Interrogatory Nos. 5-6, Production Request Nos. 9, 21: Discovery Requests Relating to Sales and Profit Margins**

In interrogatories 5 and 6, and production requests 9 and 21, Barber propounds the following requests:

> **Interrogatory No. 5:** For each year since 2001, state each product sold by Radians, and with respect to each product state the annual total sales revenues, total expenses incurred in manufacturing and selling such product, and the total profits and profit margins realized by Radians.
>
> **Interrogatory No. 6:** For the period beginning in 2001, state how you track profit margins on your product sales with respect to both gross margins and any and all net margins, and what records and/or data you maintain for same.
>
> **Production Request No. 9:** All documents that reflect or show the volume of sales of Defendant's products bearing the DeWalt name and/or sold pursuant to the licensing agreement between DeWalt and Radians (hereinafter "DeWalt licensed products").[4]

---

[4]As agreed upon by the parties, this request seeks all summaries, reports, spreadsheets and similar information.

**Production Request No. 21:** All documents in any way
related to your gross and any net margins you have
realized and expect to realize in the future with respect
to the sale of DeWalt licensed products.[5]

Barber argues that this information is relevant for evaluating

whether Radians can afford to pay Barber his claimed commission,

to calculate Barber's damages for past sales, and to demonstrate

what portion of Radians's business is derived from the DeWalt

licensing agreement.  Radians counters by arguing that information

concerning non-DeWalt licensed products are irrelevant and outside

the scope of discovery.

The court concludes that the information and documents sought

that relate to DeWalt licensed products are relevant and

discoverable, but information and documents pertaining to non-

DeWalt products are irrelevant to Barber's claim.  Specifically,

Barber claims that as a result of his work in procuring and

coordinating the DeWalt licensing agreement, he is owed a 3 ½%

commission from the sale of all DeWalt licensed products.  The

purported contract further states that the commission is contingent

upon the DeWalt licensing agreement reaping a minimum gross profit.

The sales, expenses, and profits for DeWalt licensed products is

therefore highly relevant to whether Barber is entitled to a

---

detailing Radians's sales, both realized and expected to be
realized in the future.

[5]As agreed upon by the parties, this request seeks all
summaries, reports, spreadsheets and similar information
detailing Radians's gross margins.

commission and establishing the amount of the commission owed.
Based on Radians's response brief, it appears they have complied
with these discovery requests by providing responsive information
regarding Dewalt licensed products.

The sales, expenses, and profit margins of other Radians
products, however, have no bearing on whether Barber is due a
commission. Whether Barber is entitled to a commission under the
purported agreement is contingent upon Radians earning minimum
gross profits for sale of only DeWalt licensed products, not upon
minimum gross profits for Radians's products as a whole. Further,
the commission is based on the sale of DeWalt licensed products;
information concerning non-DeWalt licensed products is irrelevant
for the purposes of establishing Barber's damages.

Finally, to the extent Barber seeks the above information to
demonstrate the percentage of Radians's business that is derived
from the DeWalt licensing agreement, Radians has agreed to provide
and will continue to provide Barber with Radians's total sales and
total gross margin for all of its other non-DeWalt products (not
itemized by each product). The court finds that this information
is sufficient to allow Barber to determine the percentage of
Radians's total sales and profits derived from the DeWalt licensing
agreement, and does not burden Radians with the task of providing
the sales, expenses, total profits, and profit margins for each of
its products. Thus, Barber's request for information relating to

non-DeWalt licensed products, beyond the information that Radians

has agreed to produce, is DENIED.

**C.    Interrogatory Nos. 8-9, Production Request No. 12: Discovery
Requests Relating to Projected Sales**

In interrogatories 8 and 9, and production request 12, Barber

seeks the following information:

> **Interrogatory No. 8:** For all DeWalt licensed products and
> for each category of DeWalt licensed products being sold,
> or to be sold under the DeWalt license, state what your
> total projected sales are over the entire term of the
> DeWalt license agreement, including option periods.

> **Interrogatory No. 9:** For all DeWalt licensed products
> together, for each of the industrial and retail markets,
> and for each separate product category of products being
> sold, or to be sold under the DeWalt license, state what
> your total sales have been and what your projected sales
> are over the entire term of the license agreement,
> including option periods.

> **Production Request No. 12:** All documents related to all
> projections of the sales by Defendant of DeWalt licensed
> products.

Barber argues that information concerning Radians's projected

sales is relevant to establish damages suffered by Barber.  Radians

contends that because it began selling DeWalt licensed products in

July, 2004, any projections are too speculative to be admissible

and, hence, are outside the scope of discovery.

Lost profits are an available component of damages in cases

based upon breach of contract.[6]   They are recoverable, however,

---

[6]Although Barber is seeking lost commission proceeds rather
than lost profits, the lost profits analysis is appropriate
because the alleged lost commissions Barber seeks are derived
from a percentage of Radians's profits.

only "when the amount of damages can be proven with reasonable certainty, and are not remote or speculative." Forklift Systems, Inc. v. Werner Enterprises, No. 01-9804-CH-00220, 1999 Tenn. App. LEXIS 324, at *3 (Tenn. Ct. App. May 25, 1999) (unpublished).  A plaintiff can prove lost profits by introducing evidence of, inter alia, projected sales.  DSC Communications Corp. v. Next Level Communications, 107 F.3d 322, 329-330 (5th Cir. 1997) (affirming award of lost profits based on expert testimony concerning projected sales of new product yet to enter market); Fen Hin Chon Enterprises, Ltd. v. Porelon, Inc., 874 F.2d 1107, 1114 (6th Cir. 1989).

Radians asserts that because its licensing business with DeWalt is a "new business," its sales projections are too speculative and thus should not be relied upon in determining damages.  Radians points to ITT Hartford Group v. Virginia Financial Assocs., Inc., 520 S.E.2d 355 (Va. 1999) as support for its argument.  In ITT Hartford, the Virginia Supreme Court overturned a $5 million verdict based, in part, on expert testimony that provided an estimate of lost income by the plaintiff, Virginia Financial Associates ("VFA").  Id. at 360.  The expert relied upon the two-and-one-half-year history of VFA's income as the basis for his projections.  The court held that such testimony was speculative, as this short period of time did not qualify VFA as an established business with a proven earning capacity that could

provide a sufficient basis for a reliable estimate.

Radians's reliance on ITT Hartford is misplaced. First, the court in ITT Hartford did not hold that sales projections are irrelevant to the calculation of lost profits. Rather, the court opined that the sales projections in that case, without more, were insufficient to support the damage award based on lost profits. The Federal Rules do not preclude discovery of this information. Fed. R. Civ. P. 26(b)(1). Whether these sales projections ultimately will be sufficient to support an award of lost profits at trial is not before the court. Instead, the court need only decide whether the information sought is relevant.

Second, to the extent that ITT Hartford stands for the proposition that, as a matter of law, lost profits are unavailable for a new business, Tennessee has rejected such a formalistic approach. Traditionally, the rule had been that lost profit damages for a new business are not recoverable as a matter of law because the damages are too speculative to be considered reliable. See Hamm v. City of Gahanna, No. 96-0878, 2002 WL 31951272, at *10 (S.D. Ohio Dec. 23, 2002) (unpublished) ("Most recent cases reject the once generally accepted rule that lost profits damages for a new business are not recoverable") (quoting Robert L. Dunn, Recovery of Damages for Lost Profits § 4.3 (5th ed. 1998)). However, the Tennessee Supreme Court and Court of Appeals have expressly rejected this traditional rule. See Burge Ice Machine

-10-

Co. v. Strother, 273 S.W.2d 479, 485 (Tenn. 1954); Ferrell v. Elrod, 469 S.W.2d 678, 686-87 (Tenn. Ct. App. 1971); see also Robert M. Lloyd, Contract Damages in Tennessee, 69 Tenn. L. Rev. 837, 881 (2002). Rather, the standard is whether lost profits can be proven with "reasonable certainty." Forklift Systems, 1999 Tenn. App. LEXIS 324, at *3. Information about Radians's projected sales is relevant to the damages allegedly suffered by Barber and, by itself or in combination with other evidence, may demonstrate at trial with "reasonable certainty" the profits that Barber claims to have lost. Therefore, Barber's motion with respect to this information is GRANTED.

**D.    Production Request No. 13: Discovery Request Relating to Radians's Inventory**

In production request 13, Barber propounds the following request:

> **Production Request No. 13:** Documents showing your current inventory of all DeWalt licensed products with respect to both total inventory and by product category.

Barber contends that information relating to Radians's inventory of DeWalt licensed products are an indication of Radians's present and future sales, and thus relevant to the calculation of Barber's damages. Radians contends that its inventory is no indicator of sales, as "[h]aving a high inventory neither guarantees nor prohibits sales any more than having a low inventory does."

The court finds that the documents sought in request 13 are

-11-

relevant to Barber's claim for damages. Inventory numbers alone do not prove present or future sales. Nevertheless, when this information is considered in conjunction with Radians's projected sales and other discovery responses, information relating to Radians's inventory is relevant to test the accuracy of the present and projected future sales figures provided by Radians for its DeWalt licensed products. Barber's motion is GRANTED with respect to this request.

**E.    Document Request Nos. 25-26: Discovery Requests Relating to Former Customer Service Employee**

In production requests 25 and 26, Barber seeks the following:

**Production Request No. 25:** A complete copy of the personnel file of Michelle _____ (last name presently unknown), a former customer service employee of Radians.

**Production Request No. 26:** All correspondence with Michelle _____ (last name presently unknown), a customer service employee of Radians, and all other documents concerning the relationship, job responsibilities and compensation terms agreed to between her and Radians, including Radians/Tutor's promise to pay her a bonus or commission for procuring a certain contract for Radians and Radians/Tutor's subsequent breach of that agreement in or about the Spring of 2004 after her procurement of the contract.

Barber contends that this information is relevant to his promissory fraud and punitive damages claims because it shows Radians's pattern of rescinding offers to employees after procuring new business and its wilfull and malicious conduct. Radians has responded by stating that it "is not aware of any such employee."

In his Memorandum in Support of Plaintiff's Motion to Compel,

Barber refers to this unknown customer service representative as "Heather." In Plaintiff's First Request for Production of Documents, Barber refers to this former employee as "Michelle." Thus, it is unclear whether this former customer service employee is named Michelle or Heather. The court, therefore, orders Radians to supplement its prior discovery response by stating whether there are any current or former customer service employees named "Michelle" or "Heather" who worked for Radians in 2004. If any such employees are identified, Radians shall then further identify which employee, from the list provided, had a written or oral contract with Radians that included a promise to pay the employee a commission or bonus in exchange for the employee's efforts in procuring a new contract for Radians. On this basis, the motion to compel is GRANTED.

**F.    Document Request No. 14: Discovery Request Relating to Corporate Structure**

In production request 14, Barber propounds the following request:

> **Production Request No. 14:** All documents relating to organizational charts for Radians, and all of its affiliated companies, including Techna, Inc. and Safety Supply Corporation, from January 2000 to the present.

Barber acknowledges that an organizational chart for Radians has been supplied, but none have been provided for any affiliated companies. Barber argues that such charts, in conjunction with financial information describing the capitalization of Radians, are

-13-

relevant for the purpose of establishing whether Radians is undercapitalized of if other grounds exist which would necessitate piercing the corporate veil.

Radians has not responded to Barber's motion regarding this particular discovery request. The requested information appears to be relevant, and thus, the motion is GRANTED regarding this discovery request.

**G.    Interrogatory No. 10, Production Request Nos. 22-24: Discovery Requests Relating to Finances and Net Worth**

In interrogatory 10 and production requests 22, 23 and 24, Barber seeks the following information:

> **Interrogatory No. 10:** For the period since January 2001, identify all financial statements prepared and maintained by or for Radians.

> **Production Request No. 22:** All of your financial statements, including, but not limited to balance sheets, income statements, changes in financial position and/or cash flow statements, and statements of earnings before interest, taxes, depreciation, and amortization prepared by you or on your behalf since January 1, 2001.

> **Production Request No. 23:** All of your Charts of Accounts and statements of accounts for any and all asset accounts of any type, including but not limited to, money market accounts, mutual fund accounts, ready asset accounts, cash management accounts, and brokerage accounts maintained by you, on which you now have or have had drawing privileges since January 1, 2001.

> **Production Request No. 24:** Copies of any other documents, not previously produced, evidencing your total net worth.

Barber asserts that the requested information relating to Radians's net worth is relevant to his claim for punitive damages.

Radians contends that under Tennessee law, where punitive damages are sought, the trial court is required to bifurcate the damages phase upon motion by the defendant. Thus, argues Radians, information relevant to the amount of punitive damages is irrelevant unless and until Radians is found liable for punitive damages at trial.

In the court's review of the record, it appears that the parties do not dispute that these causes of action arise under Tennessee law. In Tennessee, in a trial where punitive damages are sought, the court upon motion of the defendant must bifurcate the trial. <u>Hodges v. S.C. Toof & Co.</u>, 833 S.W.2d 896, 901 (Tenn. 1992). During the first phase, the factfinder shall determine liability for compensatory and punitive damages, and the amount of compensatory damages. If the factfinder finds a defendant liable for punitive damages, the determination of the amount of such damages shall then be determined in a separate proceeding. <u>Hodges</u>, 833 S.W.2d at 901; <u>see also</u> <u>Culbreath v. First Tennessee Bank National Assoc.</u>, 44 S.W.3d 518, 527 (Tenn. 2001)(citing <u>Hodges</u>).

In this federal action, however, this court looks to Fed. R. Civ. P. 42(b). <u>See</u> <u>Oulds v. Principal Mutual Life Ins. Co.</u>, 6 F.3d 1431, 1435 (10th Cir. 1993)("bifurcation of trials is permissible in federal court even when such procedure is contrary to state law"); <u>Getty Petroleum Corp. v. Island Transp. Corp.</u>, 862 F.2d 10, 14-15 (2d Cir. 1988)(permissible not to bifurcate liability and

punitive damage issues despite state law requiring bifurcation);
Sellers v. Baisier, 792 F.2d 690, 694 (7th Cir. 1986)("Rule 42 may
be applied in diversity cases [to bifurcate the issues of liability
and damage] even though the state law employed to determine the
substantive issues in the case prohibits bifurcated trials.");
Rosales v. Honda Motor Co., 726 F.2d 259, 261-62 (5th Cir.
1984)(federal court trying a diversity case is not required to
follow state law in matters relating to bifurcation of trial).

Rule 42(b) authorizes the court to order a separate trial of
any claim when separation is in the interest of judicial economy,
will further the parties' convenience, or will prevent undue
prejudice. See Fed. R. Civ. P. 42(b). The decision to bifurcate
is committed to the sound discretion of the trial court. Moss v.
Associated Transp., Inc., 344 F.2d 23, 25 (6th Cir. 1965); see also
Hirst v. Gertzen, 676 F.2d 1252, 1261 (9th Cir. 1982). Thus,
because the trial may or may not be bifurcated in this case, this
bifurcation-based argument does not provide a basis to deny
punitive damages discovery.

Radians points to Treace v. Unum Life Insurance Co., No. 03-
2409, 2004 WL 3142215 (W.D. Tenn. Aug. 10, 2004) (unpublished), and
Cook v. Caywood, No. 04-2139, 2004 WL 3142221 (W.D. Tenn. Dec. 15,
2004) (unpublished), as support for its argument that discovery
pertinent to punitive damages is inappropriate unless the plaintiff
can demonstrate that a factual basis for punitive damages exists.

-16-

However, the Federal Rules of Civil Procedure, rather than the substantive law of Tennessee, determine the bounds of discovery in a federal diversity case. The court notes further that "a majority of federal courts permit pre-trial discovery of financial information about the defendant, without requiring plaintiff to establish a prima facie case that defendant will be held liable for punitive damages." Atlean Tyson v. Equity Title & Escrow Co. of Memphis, No. 00-2559, 2003 U.S. Dist. LEXIS 16695, at *10 (W.D. Tenn. Mar. 28, 2003) (Allen, J.) (unpublished); see also Christy v. Ashkin, 972 F.Supp. 253, 253 (D. Vt. 1997); CEH, Inc. v. FV "SEAFARER", 153 F.R.D. 491, 497-98 (D.R.I. 1994); Mid-Continent Cabinetry v. George Koch Sons, Inc., 130 F.R.D. 149, 151-52 (D. Kan. 1990). In any event, even assuming that this case were to be bifurcated for punitive damages, permitting discovery of Radians's financial condition at this discovery stage promotes judicial economy. See CEH, 153 F.R.D. at 471. Barber's motion is therefore GRANTED regarding his discovery of defendants' finances and net worth.

**H. Production Request No. 2: Discovery Request Relating to Communication Between Radians and DeWalt**

In production request 2, Barber propounds the following request:

> **Production Request No. 2:** All documents constituting any communication or referencing any communication between defendant, and/or agents, employees or representatives of defendant and the De-Walt Industrial Tool Division of the

Black & Decker Corporation (hereinafter "DeWalt").[7]

Barber acknowledges that Radians has produced documents in response to this request, but notes that he has not received any documents that were generated after Barber was terminated. Radians responds by stating that it has fully responded to this request and that no such documents exist. The court, therefore, considers Barber's motion to compel with respect to this particular request moot.

## I.    Production Request No. 27: Discovery Requests Relating to Bates Labeled Documents

In production request 27, Barber propounds the following request:

> **Production Request No. 27:** All bates labeled documents returned to you by Barber in 2004, bearing a bates label number higher than 2,210.

Barber asks Radians to supply him with all bates-labeled documents bearing a bates label number higher than 2,210 so that Barber may have a copy of these documents with the bates label affixed to the document.[8] Radians suggests that Barber send the documents lacking bates numbers to Radians, and Radians will

---

[7]As agreed upon by the parties, this request seeks production of documents referencing any communication between Radians and DeWalt concerning Barber.

[8]According to Barber's Motion to Compel, these documents were originally possessed by Barber before they were returned to Radians in 2004 in anticipation of the filing of this case. While in possession of these documents, Barber failed to make a copy of the documents that included the bates number.

respond by forwarding a copy of all bates-stamped documents that correspond to the documents sent by Barber.  The court finds that Radians's proposal is appropriate.  This approach will ensure that Barber receives the exact documents he seeks and reduces the likelihood that Radians will send more documents than necessary.

### III. CONCLUSION

For the reasons above, the Plaintiff's motion is GRANTED in part and DENIED in part.  To the extent the motion is granted, the defendants are ordered to produce the information and documents within twenty (20) days from the date of this order.

Barber's request for sanctions in the form of an award of attorney's fees and expenses is DENIED.

IT IS SO ORDERED.

TU M. PHAM
United States Magistrate Judge


September 21, 2005
Date

-19-

# UNITED STATES DISTRICT COURT — WESTERN DISTRICT OF TENNESSEE



# Notice of Distribution

This notice confirms a copy of the document docketed as number 92 in case 2:05-CV-02041 was distributed by fax, mail, or direct printing on September 23, 2005 to the parties listed.

---

James V. Bellanca
BELLANCA BEATTIE AND DE LISLE, P.C.
20480 Vernier Road
Haoer Woods, MI 48225--141

Steven Hymowitz
KIESEWETTER WISE KAPLAN & PRATHER, PLC
3725 Champion Hills Drive
Ste. 3000
Memphis, TN 38125

Frank D. Eaman
BELLANCA BEATTIE AND DE LISLE, P.C.
20480 Vernier Road
Harper Woods, MI 48225--141

Paul B. Billings
LAW OFFICE OF PAUL B. BILLINGS, JR.
6555 Quince Rd.
Ste. 109
Memphis, TN 38119

Joel T. Galanter
ADAMS AND REESE/STOKES BARTHOLOMEW
424 Church St.
Ste. 2800
Nashville, TN 37219--232

Howard L. Cleveland
KIESEWETTER WISE KAPLAN SCHWIMMER & PRATHER
3725 Champion Hills Dr.
Ste. 3000
Memphis, TN 38125

James C. Zeman
BELLANCA BEATTIE AND DE LISLE, P.C.
20480 Vernie Road
Harper Woods, MI 48225--141

Brad A. Lampley
ADAMS AND RESSE/STOKES BARTHOLOMEW
424 Church St
Ste 2800
Nashville, TN 37219

Honorable Samuel Mays
US DISTRICT COURT